### 1922.  DEEN *v.* WHEELER.

1. The judge did not err in allowing the amendments to the petition:

(a) Where the original petition in an action for damages under the provisions of section 622 of the Political Code alleges that the defendant's liability attaches by reason of the fact that he is the owner of the ferry,

an amendment stating that he is also liable because he is the owner of the land upon the stream is not subject to the objection that it sets forth a new and distinct cause of action, if both the original petition and the amendment refer the injury and damage to the same transaction. In such case, if other necessary allegations are proved, the plaintiff may recover if he proves *either* that the defendant was proprietor of the ferry, or owner of the land at the landing place of the ferry, or was *both.*

(*b*) The amendment which set up an additional specific act of negligence as to the condition of the bight, and merely stated an additional contributing cause of the injury, was mere surplusage. The allowance of the amendment worked no injury to the defendant. Public ferrymen being common carriers, no allegation of negligence was necessary in a suit brought to recover damages for the loss of property accepted for shipment. *L. & N. Railroad* v. *Warfield*, 129 *Ga.* 473 (59 S. E. 234) ; Civil Code. § 2264.

(*c*) A plaintiff has the right to amend his petition after the evidence has closed and after the charge of the court has been delivered, provided the amendment is germain to the cause of action and submits issues supported either directly or inferentially by the evidence.

(*d*) A motion to continue upon the ground that a party is unprepared to meet the allegations of his antagonist should be overruled, unless a good reason why the movant is unprepared is shown, and it is made to appear that the delay is necessary to remove the cause of the movant's disadvantage and will likely be effective for that purpose.

2. (*a*) Where the trial judge, in the presence of the counsel and without objection on the part of any one interested in the cause, instructs the jury that they may disperse after they have agreed upon and signed their verdict, and may return the verdict into court the following morning,—directing that meanwhile, after the verdict has been signed, it shall be sealed with the papers in an envelope furnished by the court and safely kept overnight by the foreman,—a mistrial will not be declared, unless it appears that some attempt was made to tamper with the jury or some act has transpired which might have operated to the injury of the complaining party.

(*b*) Either party to a cause has the right to prevent the dispersal of the jury (between the time when the jury retires to consider their verdict and until the verdict has been returned into court and published), by objecting thereto at any time before the jury returns the verdict and it is published. It would be error to allow the jury to separate if either party objected to the separation, but where both parties agree that the jury may disperse, neither party will thereafter be heard to complain.

(*c*) Even though a party does not expressly consent that the jury may separate before returning their verdict into court, yet if the party or his counsel is in the presence and hearing of the court at the time that the judge authorizes the jury to separate, and does not object, he may be held to have impliedly consented thereto, if the circumstances surrounding the statement of the judge to the jury are such that the inference that he did hear the direction of the judge can not reasonably

be precluded. Where it appears that a party or his counsel was present when a ruling complained of was made, and that the circumstances were such that it was unlikely that the counsel did not hear what was said by the court, although the party or counsel may state that he did not hear the ruling, the judge's action in disregarding this statement will be held to be a finding upon the facts, and conclusive.

3. The exceptions to the charge of the court, as set out in the motion for new trial, are without merit.

4. The assignment of error in which it is insisted that, in charging the jury that if the plaintiff was entitled to recover at all, he was entitled to recover $250, the judge erred, for the reason that the question of damages was one for the jury to determine, and not the court, because it was within the province of the jury to determine if the plaintiff was at fault, and to reduce the amount of recovery accordingly, is not sustained by the record; for, according to the only evidence as to the value of the horse in question, its value was $250. There was no evidence, direct or circumstantial, from which an inference could be drawn that its value was less than that amount. Especially was the charge not erroneous in the particular respect pointed out by the assignment of error. The judge was not required to charge upon the subject of contributory negligence or diminution of damages, because the defendant did not set up contributory negligence as a defense; no request to charge upon the subject was presented, and there was nothing in the pleadings or evidence to require instructions upon the subject.

5. The evidence authorized the verdict, and there was no error in refusing a new trial.

Action for damages; from city court of Baxley—W. W. Bennett, judge pro hac vice. April 7, 1909.

Argued July 15, 1909.—Decided February 26, 1910.

*J. H. Thomas, J. P. Highsmith,* for plaintiff in error.

*Padgett & Watson,* contra.

RUSSELL, J. Wheeler brought a suit against Deen, alleging, that the defendant was the owner of a chartered public ferry known as Mann's ferry, on the Altamaha river, and operated it as such, and transported persons and property across the river at said ferry for hire; that in crossing the river at said ferry on December 1, 1907, the plaintiff's horse was knocked from the ferryboat and drowned, and he was thereby damaged in the sum of $250; that the ferryman was intoxicated, and that the horse was thrown from the flat by reason of the carelessness, negligence, and improper conduct of the defendant's agents in charge of the ferry; and that the ferryboat had been allowed, by the negligence of the defendant's agents, to go into a bight, instead of to the usual landing place. The petition was amended by the allegation that the realty where

the ferry lands, on the southwest side of the Altamaha river, was the property of the defendant, and that one Felix King, with the defendant's consent and permission, operated said ferry. The defendant's first answer was a general denial of the allegations as to his ownership and operation of the ferry, but during the trial he amended this answer by admitting the ownership of the ferry and of the land. At the conclusion of the charge of the court, the plaintiff further amended his petition by adding another count, as to negligence, to wit, that the defendant was negligent in allowing certain limbs, twigs, and other objects and obstacles to exist and remain where the flat was liable to land, which caused his horse to become scared and excited.

At the conclusion of the judge's charge to the jury, he instructed them, in the presence of the defendant's counsel, and without objection, that they could seal their verdict in an envelope (which was delivered to them by the judge in the presence of the defendant's counsel), and could deliver it to their foreman, after which they could disperse, and let their foreman return the verdict into court the following morning. After making their verdict, and before returning it into the court, the jury dispersed, and they remained dispersed during the night. On the following morning they reassembled for the purpose of returning their verdict in open court, and the defendant, before the verdict was received, objected to its being received, and made a motion to declare a mistrial. This motion was based upon the ground that the jury had dispersed after the verdict had been made and before it had been returned, and that neither the defendant nor his counsel had any knowledge of the permission given to the jury to disperse, or consented thereto. (It appears that the defendant was not present during any stage of the trial.) A mistrial was also asked for the purpose of continuing the case, upon the ground that the allowance of the amendment, which had been offered at the conclusion of the judge's charge and just before the jury retired, set up new, distinct, and additional grounds of negligence, and the defendant had had no opportunity to meet the amendment. The judge overruled the motion to declare a mistrial, and caused the verdict to be published and entered upon the minutes. The jury found a verdict of $250 in favor of the plaintiff. The defendant then filed a motion for a new trial, which was overruled. The writ of error challenges the

correctness of the judgment overruling the motion for new trial, and the propriety of the ruling refusing to declare a mistrial and to continue the case.   Special exceptions are also taken to the allowance of the amendment to the plaintiff's petition, and to the following instruction of the court to the jury: "I charge you in this case that if the plaintiff is entitled to recover at all, he is entitled to recover the sum of $250, and it will not be necessary for me to give you any further instructions on the subject of damages."

1.   The judge did not err in allowing the amendment to the petition, of which complaint is made.   The original petition alleged that the ferry was run and operated by Deen, his servants, agents, and employees.   The amendment to that paragraph of the petition alleged that in addition to being the owner of the ferry, Deen was the owner of the land on the south or west side of the Altamaha river, where the ferry lands, and permitted Felix King to operate the ferry.   The amendment does not set out a new cause of action, but is rather a mere amplification of the statements of the plaintiff's original cause of action.   Either the fact that Deen was the owner of the ferry, or that he owned the land on the stream where the ferry landed, would subject him to liability for the carelessness or bad conduct of whoever might be operating the ferry. The plaintiff's right of action, if any, depended upon the provisions of section 622 of the Political Code.   This code section holds the proprietors of ferries liable for neglect of any person whom they may permit, either as servant, agent, or lessee, to operate the ferry: "Any proprietor of any bridge, ferry, turnpike or causeway, whether by charter or prescription, or without, or whether by right of owning the lands on the stream, are bound to prompt and faithful attention to all their duties as such; and if any damages shall occur by reason of non-attendance, neglect, carelessness or bad conduct, he is bound for all damages, even if over and beyond the amount of any bond that may be given."   In the original petition the plaintiff charged that the defendant's liability attached by reason of the fact that he was a proprietor under charter.   The amendment simply gave an additional reason why he was liable,—that he was the owner of the land on the stream.   Under the ruling in *Printup* v. *Patton,* 91 *Ga.* 422 (5), (18 S. E. 311), the owner of the land on which a public ferry is situated, unless the ownership of the ferry be separate from that of the land, is liable for negli-

gent torts committed by the ferryman in the performance of his duties as such, even if the owner objects to the use of the ferry. In order to avoid responsibility to the public, he must prevent his ferry from being used as a public ferry by a tenant of the land, or at least show that he did all in his power to prevent it. The plaintiff alleged that the defendant in this case owned both the ferry and the land. Chief Justice Bleckley, in discussing the *Printup* case, supra, says (p. 433) : "Where ownership of the ferry is separated from that of the land, the owner of the latter has no control over keeping the ferry open, using it, or the manner of its use. But where he owns the ferry as well as the land, he must keep it closed or take the consequences. He must at least do all in his power to prevent any tenant of the land from using it as a public ferry. The policy of the statute is to protect the public against injuries by careless or incompetent ferrymen who may be too indigent to respond in damages. Another object is to make it easy for strangers and wayfaring men to ascertain whom to sue in case they are injured. The name and residence of the particular ferryman in whose charge the ferryboat was when the injury was sustained might be hard to prove; but to whom the ferry or the adjacent lands belonged would generally be widely known in the neighborhood, and readily established." Under the rules announced in *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 691 (13 S. E. 809), the amendment was clearly permissible.

The second amendment allowed by the court was, we think, likewise germain to the original petition. It certainly was not hurtful to the defendant, even if it was immaterial. It simply attempted to set up the fact (as the conclusion of other negligent acts permitted by the defendant as alleged in the petition) that the bight into which the negligence of the ferryman permitted the ferryboat to be carried was full of twigs and bushes, which struck and scared his horse. The amendment merely stated an additional contributing cause leading up to the drowning of the horse. The allowance of this amendment was not error, and even if it were, could not afford the defendant any ground for complaint, because, ferrymen being common carriers, an allegation of negligence, in a suit brought to recover damages for the loss of property accepted for shipment, was unnecessary. Civil Code, §2264; *L. & N. Railroad* v. *Warfield*, 129 *Ga.* 473 (59 S. E. 234).

The main insistence of the plaintiff in error is that this amendment was offered after the judge had concluded his charge, and that the mistrial should have been declared because he was unprepared to meet the allegations of the amendment. The plaintiff had the right to amend his petition any time before the verdict was rendered, certainly any time before the jury retired; for the amendment was germain to the cause of action and submitted no new issues.

Furthermore, the motion to declare a mistrial for the purpose of continuing the case, upon the ground that the defendant was unprepared to meet the statements of the amendment, was fatally defective, in that it was not made to appear why the defendant was not as well prepared to controvert the averment then as he would be at the term to which he asked that the case be continued. In fact, in the motion for mistrial, no reference is made to any specific averment as being one that he was not prepared to meet.

2. The defendant moved for a mistrial upon the further ground that the court had permitted the jury to disperse in advance of the publication of the verdict, without his consent, or the consent of his counsel. If this statement were fully verified, we would hold that it was error to have thus deprived the defendant of the right of polling the jury. Ordinarily each party to a cause has the right to poll the jury, in order to ascertain whether the verdict returned into court is the unanimous expression of each and every juror's sworn judgment as an unbiased trior. The polling amounts to nothing if the jury has been dispersed and mingles with the outside world, because the juror may have been subjected to such influence after the dispersal as to make his opinion then not the opinion of the sworn juror, but merely the opinion of a member of the community in general. For this reason this ground for a mistrial has been upheld in this State in every case where the jury has been permitted to disperse without the consent of counsel, or parties, and to mingle with the public during the interval between the time when the verdict was reached and the time when it was returned into court. The real question, then, is whether or not the defendant's counsel (the defendant himself not being at court during the trial) consented to the separation of the jury; or rather whether the consent of counsel must not, upon grounds of public policy, be implied, under such circumstances as those disclosed in

this record. The judge certifies that at the time when he instructed the jury that when they agreed upon a verdict they could place it in an envelope, which he handed to one of them, seal the envelope and deliver it to the foreman, and then disperse until the next morning, counsel for the plaintiff in error was present in court, and that what the court said and did was in the presence of the counsel, and that though no express consent was given, no objection was made to the instructions above stated.. Upon the motion for mistrial, counsel for the plaintiff in error did not deny that he was present in court, but stated in his place that he did not hear the direction of the judge to the jury, or see the delivery of the envelope. The only inference in harmony with both the statement and the certificate is that the defendant's counsel was present and did not object to the dispersal of the jury, because, perhaps, he was so absorbed or engaged in some other matter as to have temporarily withdrawn his attention from the case. If so, the maxim lex vigilantibus non dormientibus subveniunt applies. Counsel should, in the interest of justice and of their clients, at every stage of the trial, give strict attention to the acts and sayings of the presiding judge. Certainly there should be no relaxation of attention until the judge has completed his charge and the jury have retired. Among reasons which might be mentioned, it is the duty of counsel, if the instructions of the court are too general to present specifically the exact issue which may appear to be important to his client, to request additional and more specific instructions upon the matter thus deemed to be important. From an ethical standpoint, it is the duty of counsel, if he sees that the court has made an omission of an essential instruction, to courteously suggest to the court that there has been such omission. The many reasons why counsel should be prepared, in exigencies similar to that involved in this case, to act in behalf of his client, if he desires to object, are too numerous to permit of elaboration. What has been said is merely an example. But in addition to this, we are obliged to construe the certificate of the judge as a finding upon the facts, adverse to the contention of counsel for the defendant. The counsel stated that he did not hear what the judge said. The effect of the judge's note is to find that the counsel was at such a place, and other circumstances were such, that it was impossible for counsel not to have heard what was said by the court upon this

subject; and we place our ruling upon that theory. Assuming that counsel heard what the judge said, if he had objected the judge would have erred in allowing the jury to disperse. As counsel did not object, his consent to the dispersal must be implied; and having consented to the dispersal, he will not be heard thereafter to complain.

3. Several exceptions are taken to the judge's charge to the jury, which are addressed to the single point that he used such terms as "carelessness" and "inexcusable neglect." We have carefully examined into these exceptions, and we find no error in the language used by the judge. If this were an action against a railroad company to recover damages for an injury caused by negligence, the position of counsel for the plaintiff in error upon this point might be well taken. The case before us, however, is based upon a special statute against a ferryman, and as the terms "carelessness" and "bad conduct" which were used by the court are employed in the very code section itself, their use can not be said to be improper.

The assignment of error which complains that the judge did not give the jury any instructions as to the degree of diligence which the defendant was bound to exercise we find to be unsupported in fact, because the judge expressly charged the jury that the defendant, as a common carrier, was bound to use extraordinary diligence. None of the exceptions to the charge, embodied in the motion for new trial, are meritorious.

4. We confess that we were at first in doubt as to the exception, presented for the first time in the bill of exceptions, in which error is assigned upon the following charge of the court: "I charge you in this case that if the plaintiff is entitled to recover at all, he is entitled to recover the sum of $250, and it will not be necessary for me to give you any further instructions on the subject of damages." If the complaint had been specifically made that the judge intimated an opinion upon the evidence, in violation of section 4334 of the Civil Code, in stating that the amount the plaintiff should recover, if he recovered at all, would be $250, our duty to grant a new trial might perhaps be mandatory. However, as to this, see *Dexter Banking Co.* v. *McCook,* ante, 436 (67 S. E. 113). The language of the exception, however, is not sufficiently specific to present this point. All that can be gathered from the exception

(allowing, a most liberal construction to the language employed) is that it was within the province of the jury to reduce the amount of recovery, if they determined that the plaintiff himself was at fault, and that, therefore, when the judge stated the amount that the plaintiff was entitled to recover if he should recover at all, he erred, in that he failed to present to the jury their right to determine the amount which should be awarded in case they should find that the damages should be apportioned. As to the form of the exception, see *Anderson* v. *Southern Railway Co.,* 107 *Ga.* 500 (33 S. E. 644). The language of the exception in the present case is in these words: "Plaintiff in error excepts to this charge on the ground that the question of damages was one for the jury to determine, and not the court, and because it was within the province of the jury to determine if the plaintiff was at fault, and to have reduced the amount of the recovery accordingly." It seems clear that this exception goes no further than to assign error upon the failure of the court to instruct the jury upon the subject of contributory negligence. The statement of the exception is not that the court intimated an opinion upon the evidence, but that the charge was error because the question of the diminution of the damages is. for the jury to determine. And applying it to the particular case, the plaintiff in error contends that the reason why the question of damages should have been left for the jury more fully was because the jury might have determined that the defendant was at fault, and yet that the plaintiff was guilty of contributory negligence, and could have diminished the finding, if any, in his favor. We will say, in passing, it is questionable if it would have been an expression of opinion upon the evidence, within the terms of §4334, even if the language used were construed as a reference to the evidence introduced in the case, because there was no issue as to the value of the horse. It was worth $250, according to the testimony of the plaintiff; and no other evidence, either direct or circumstantial, was introduced upon the subject. If there had been a single circumstance indicating the quality of the horse, his appearance, or movements, or state of health,—anything which might have indicated his value,—the jury might have indulged the inference that the horse was worth more or less than the value ascribed to him by the only witness who testified on that subject; and in that case to have intimated that the horse had any fixed value

might have been injurious to one or the other of the parties, and therefore ground for a reversal. It is not, however, always error for a judge to state as a fact a proved fact not contradicted in the evidence; and it has been held that he may without error state a fact indisputedly proved to be a fact. *Dexter Banking Co.* v. *McCook, supra.* The real question raised by the exception is that the judge failed to instruct the jury upon the special law of diminution of damages. A review of the pleadings and evidence establishes the fact that this affords no ground for a reversal of the judgment refusing a new trial. Even though the plaintiff in error is permitted to present, by direct exceptions in his bill of exceptions, this assignment of error, which the lower court has not had the opportunity to consider, because it was not embodied in the motion, still it was not error to omit the charge upon contributory negligence or diminution of damages. The judge could have charged upon it if he had desired; and if either the pleadings or the evidence introduced the issue, it would have been his duty, as has been several times held, to instruct the jury upon this point, even without request. In this case, however, neither the pleading nor the evidence suggests any diminution of the amount of the defendant's liability on account of the fact that the plaintiff had contributed to the injury. The plaintiff placed the whole burden of blame upon the defendant. The defendant in his answer, did not set up contributory negligence, but instead contented himself with a denial of the allegations of the plaintiff's petition. In such a case, as was held in *Georgia, Florida & Alabama Railway Co.* v. *Sasser,* 4 *Ga. App.* 276 (61 S. E. 505), the judge is not required to charge upon the contributory negligence of the plaintiff, unless specially requested. The judge having appropriately instructed the jury as to the degree of negligence which would be necessary to entitle the plaintiff to recover, and having on the other hand charged the jury that if the defendant was not guilty of such negligence, they should find for the defendant, and neither the pleadings nor the evidence making any express issue on the question, the failure to instruct the jury further that if, by use of ordinary care, the plaintiff could have avoided the injury he was not entitled to recover, was not error. *Louisville & Nashville Railroad Co.* v. *Thompson,* 113 *Ga.* 983 (39 S. E. 493) ; *Georgia, Florida & Alabama Ry. Co.* v. *Lasseter,* 122 *Ga.* 680 (51 S. E. 15). In *Southern Railway Co.*

v. *Gore*, 128 *Ga.* 627 (58 S. E. 180), and in *Seaboard Air-Line Railway* v. *Bostock*, 1 *Ga. App.* 189 (58 S. E. 136), it is held that where the pleadings and evidence make an issue as to whether the injury could have been prevented by ordinary care on the part of the plaintiff, it would be error for the judge not to so instruct the jury, even in the absence of a request. In this case the defendant not having specifically set up the defense in the pleadings or in the evidence, the exception is without merit.

5. Upon a careful review of the evidence it is plain that the jury were authorized to find for the plaintiff. The evidence established the ferry to be a public chartered ferry and the ferryman a common carrier. As such, he can not make a special contract limiting his liability of the kind mentioned in the evidence. The defendant, as owner of the land, was responsible for all of the negligence of any person operating the ferry with his knowledge and consent. The jury could well infer that the ferryman was intoxicated, that his assistant was incompetent, that the appliances used in transporting the boat were unsuitable and insufficient, and that the carelessness and unskilfulness of the ferryman and his assistant, for whose acts the defendant was legally liable, were responsible for the boat's being carried beyond the usual landing place, and so suddenly stopped in this unsuitable place as to jar or knock the horse overboard. As there is no dispute as to the value of the horse in question, we find no error in the judgment of the trial judge approving the verdict.                    *Judgment affirmed.*