11842.  McKENZIE, adm'r, v. NORTHWESTERN MUTUAL
LIFE INSURANCE CO.

Where a policy of life-insurance provides that the application therefor is
made a part of the policy, and the application contains the stipulation
that it is understood and agreed that if the first premium for the in-
surance applied for is not paid to the agent at the time of making
the application, no liability shall exist until a policy shall have been
issued and delivered to the applicant *and the first premium thereon
actually paid during his lifetime,* and where it appears that the ap-
plication for the insurance was signed by the applicant while in a
state of good health but that the first premium was not paid at that
time, and that a policy of insurance was issued by the insurance com-
pany and deposited in the mail, for delivery by a local agent *upon the
payment of the first premium thereon,* and that this premium was
never paid, but a tender thereof was made to a local agent ( who had
authority to collect the first premium on the policy) when the appli-
cant was upon his death-bed and only five or six hours before he died,
and that this tender was refused by the agent, and the policy never
delivered, either actually or constructively, to. the applicant, no liabili-
ty upon the policy existed. This is true notwithstanding the absence
of any stipulation in the policy, or the application therefor, that the
applicant must be in a state of good health at the time of the delivery
of the policy and the payment of the first premium thereon.

DECIDED JANUARY 27, 1921.

Action on insurance policy; from city court of Oglethorpe —
Judge Grier.  July 29, 1920.

W. L. McKenzie, as administrator of the estate of William M.
Koonce, deceased, brought suit against the Northwestern Mutual
Life Insurance Company upon four policies of life-insurance, each
for $2,500, alleged to have been issued by the defendant on the
life of Koonce and prior to his death. The petition alleged that
the policies sued upon were outstanding and in force at the time
of the death of the deceased, and that a demand for payment had
been made, but the company refused to pay. Attached to the pe-
tition was a copy of one of the policies, and of a notice, directed
to the defendant, to produce the four original policies, together
with applications therefor and the medical examinations attached

to the policies. This notice to produce was complied with by the defendant. The defendant filed an answer admitting a demand and a refusal to pay, but denied all liability, and alleged that the policies sued upon had never been issued and delivered, nor had the premiums thereon been paid.

Upon the trial there developed the following salient facts: The plaintiff McKenzie was the duly qualified administrator of the estate of William M. Koonce, the applicant, and proofs of the latter's death were properly submitted to the defendant. The application for the insurance was signed on March 28, 1918, at Montezuma, Georgia, where the applicant and the local agent of the company who solicited the application resided. The first year's premiums on the policies were not paid at the time of the application. The medical examination of the applicant, showing him to be in a state of good health, was made on March 29, 1918, and was approved on April 12, 1918. The four policies of insurance sued upon were each dated April 11, 1918, and were mailed at the home office of the insurance company at Milwaukee, Wisconsin, on April 13, 1918. The applicant was taken ill on April 13, 1918, and died on April 15, 1918, at about 1:30 o'clock p. m. A tender of the first year's premiums on the policies was made at Montezuma, Georgia, by a friend of the applicant on April 15, 1918, at about 8 o'clock a. m., to a local agent of the company, who had authority to collect the first year's premiums on the policies, and the tender was refused; at the time of the tender the policies were somewhere en route between Milwaukee and Montezuma, but had not reached the latter place, as under the usual custom of the defendant, the policies, after being issued at the home office in Milwaukee, would be mailed to the State agent of the company in Atlanta, and forwarded by the latter to the company's agent in Macon, and from there forwarded to the local agent in Montezuma. The copy of the policy attached to the petition disclosed that the application for the insurance was signed by the applicant and was made a part of the policy. The application contained the following stipulation: " It is understood and agreed (1) that if the premium for the insurance hereby applied for is not paid to the agent at the time of making this application, no liability shall exist until a policy as applied for shall have been issued and delivered to me and the first premium thereon actually paid during

my lifetime; and (2) that if such premium is paid to the agent at the time of making this application, the insurance shall be effective, in accordance with the provisions of the policy applied for, from the date of my medical examination therefor and such policy shall be issued and delivered to me or my legal representatives, provided the company shall be satisfied as to my insurability on the date of such medical examination under the plan and amount of insurance hereby applied for; and (3) that if the company shall not be so satisfied the amount paid as premium shall be re-turned. "

The court, on motion of the defendant and after argument, awarded a nonsuit, and the plaintiff excepted.

*Jule Felton, John B. Guerry,* for plaintiff.

*Randolph & Parker, S. F. Parham, Gilbert C. Robinson,* for defendant.

BROYLES, C. J. (After stating the foregoing facts). It clearly appearing that the applicant did not pay the first year's premiums on the policies at the time the application was made, the case is controlled by the following stipulation in the application, which was made a part of the proposed contract of insurance: "No liability shall exist until a policy as applied for shall have been issued and delivered to me [the applicant] and the first premium thereon actually paid during my lifetime. " That an insurance company can legally make the delivery of a policy and the *actual* payment of the initial premium, as was done in this case, conditions precedent to the liability of the company admits of no doubt. See *New York Life Ins. Co.* v. *Babcock,* 104 *Ga.* 67 (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134) *Hipp* v. *Fidelity Ins. Co.* 128 *Ga.* 491 (57 S. E. 892, 12 L. R. A. (N. S.) 219); *Reese* v. *Fidelity Mutual Life Asso.,* 111 *Ga.* 482 (36 S. E. 637). Obviously, therefore, the insurance company in the instant case was not, under the express stipulation in the application, legally bound until the policies were delivered to the applicant and the first premiums thereon *actually* paid during his lifetime. Counsel for the plaintiff in error contend, however, that a liability on the policies existed because, under the ruling in the *Babcock* case, supra, there was a constructive deliver- of the policies when they were deposited in the mail while the applicant was still living, and because the first year's premiums on the policies were tendered

the company's agent before the death of the applicant. There are numerous cases in the books dealing with the question as to what constitutes a legal delivery of a life-insurance policy, but suffice it to say that the correct criterion by which this question is to be determined is clearly and succinctly stated in the *Babcock* case, supra, to be, not who has the *actual* possession of the policy, but who has the *right* of possession. There was, therefore, no delivery in the case at bar, unless the applicant, before his death, had the right of possession of the policies sued upon, and this right he did not have, under the express provision of the application, before *actual* payment of the first premiums during his lifetime.

The able counsel for the plaintiff in error earnestly and with no little force contend that as the applicant made, prior to his death and through a friend, a valid legal tender of the premiums to an agent of the defendant who had authority to collect the premiums, he had done everything required of him in order. to complete the contract of insurance, and that therefore he had the right of possession of the policies. As we view the case, it is upon this contention that the plaintiff's case must stand or fall; and only after a careful consideration of the facts of the case and the numerous authorities cited in the briefs of counsel for both parties, as well as many other decisions bearing upon the subject-matter, do we feel constrained to differ with counsel in this contention. As we understand the law, a tender of the first year's premiums on the policies, under all the facts of this case, and especially in view of the all-important fact that it was made when the applicant was in extremis — only a few hours prior to his death — was not equivalent to the *actual* payment of the premiums as required by the express terms of the proposed contract of insurance. This is true regardless of whether or not the application contained a stipulation that the applicant must be in a state of good health when the policies were delivered or the premiums thereon paid, since the representation made in the application as to health " is a continuous statement from the time it is made, during the progress of the negotiations, and down to the time of the completion of the contract; so that in point of fact the representations be true when actually made, yet if by some change intervening between that time and the time of completion of the contract it then becomes untrue, it will avoid the contract if the

change be material and to the prejudice of the insurers, or be such as might probably influence their opinion as to the advisability of accepting the risk. The law regards it as made at the instant the contract is entered into." 1 May on Insurance, 4th ed., par. 190. This doctrine is supported by the following cases: Trail v. Baring, 4 Giff. 485; Whitley v. Piedmont &c. Ins. Co. 71 N. C. 480.

The state of facts existing at the time of the completion of the contract is deemed by law to have been the basis of the contract (Calvert v. Hamilton Mut. Ins. Co., 1 Allen (Mass.) 308; Blumer v. Phœnix Ins. Co., 45 Wis. 622; Camp v. New Jersey &c. Ins. Co., (N. Y.), 3 Ins. L. J. 9, Fed. Cas. No. 3,719); and a change from a state of good health to serious illness is a material change and must be made known. Piedmont &c. Ins. Co. v. Ewing, 92 U. S. 377, 380 (23 L. ed. 610). The facts of the case last cited were quite similar to those in the instant case, and it was there ruled that " Where there had been a dispute between the agent of an insurance company and the applicant for insurance about the payment of the premiums, and such dispute was not settled, a friend of the applicant could not pay such premium an hour or two before the death of the applicant to such agent, who was ignorant of the hopeless illness of the applicant, and thus secure a valid policy, not delivered until after his death." Again, in the case of Assurance Society v. McElroy, 83 Fed. 631 (28 C. C. A. 365), it was said: " When the representation of good health and certificate of the surgeon have been made, and the contract is not immediately closed, but negotiations for it continue, and proposals and counter proposals are made, but for more time none are accepted, the representation and certificate continue and condition all the proposals and the ultimate contract, when it is closed. They are all made in reliance upon the continued truth of the representation and certificate, and in the belief that there has been no material change in the health or the probability of the continued life of the subject. The nature of this contract, the insurance of a man's life, the perfect familiarity of the man himself with the condition of its subject-matter, his own life, the ignorance of the insurance company concerning it, and its necessary reliance in making the contract upon his good faith, honesty, and truthfulness, impose upon him the duty of disclosing to

the company every fact material to the risk which comes to his knowledge at any time before the contract is finally closed. An intentional omission to discharge that duty perpetrates a plain fraud upon the company, which necessarily avoids the contract. The policy in this case cannot be sustained in the face of the intentional concealment by McElroy and his agent, Miss Doty, of the radical change in the condition of its subject-matter after the negotiations were commenced, and before they were closed — from a condition of robust health and probable long life, upon which they were based and were proceeding, to one of dangerous illness, of a critical surgical operation, and of imminent death. The intentional concealment of this change, and the misleading representation of continued good health and actual business life, inflicted a flagrant fraud upon this company, which is fatal to the contract of insurance, unless it was completed before McElroy was attacked with appendicitis. " See numerous cases there cited.

The rule of law embodied in the decision last cited and the authorities cited in its support are entirely applicable to the case at bar, for here the tender of the premiums was made and refused when the applicant's condition of " robust health and probable long life " had changed to one of " dangerous illness and imminent death. " As far as we have been able to ascertain there is no Georgia decision announcing a different rule. On the contrary, the rule above stated and applied is the one concerning which our Supreme Court, in the case of *Southern States Life Ins. Co.* v. *Kempton, 56 Ga.* 339, said: " We recognize fully the doctrine laid down in Bliss on Life Insurance, 240 to 257; and in Whitley v. Piedmont & Arlington Life Insurance Co., 4 Bigelow, 362-3, that *a change in health* after the application and before the policy issues *and is consummated, will relieve the company from its consummation.* " (Italics ours.) The Whitley case referred to by the Supreme Court is a North Carolina decision (71 N. C. 421), in which it is held that " A policy of life insurance is not binding until the premium is paid, such a clause being contained in the application; and it is the duty of the assured to communicate to the company any material change in his health in the interval between the application and the completion of the contract by the payment of the premium. " An inspection of the opinion in that case discloses that the application for insurance did not

contain a clause making liability dependent upon the good health of the applicant at the time the policy was delivered and the premium paid.

This ruling is not in conflict with the decision in the *Babcock* case, supra, cited and relied upon by counsel for the plaintiff. In that case the controlling facts were, first, that *the premium on the policy was paid at the time Babcock signed the application for the insurance,* and, second, that the contract of insurance contained no express stipulation that the policy should be *actually* delivered to Babcock during his life. Accordingly the Supreme Court held that when the policy was deposited in the mail at the home office of the insurance company (Babcock having already paid the premium and having nothing else to do before he was entitled to the possession of the policy), it was for the purpose of being unconditionally delivered to Babcock, and consequently the delivery to the postal authorities was, in the eyes of the law, a constructive delivery to Babcock himself. In the instant case, when the policy was deposited in the mail, it was not for the purpose of unconditional delivery to the applicant, as in the Babcock case. The applicant in this case still had a most important act to do before he was entitled to the possession of the policy. He had to *actually* pay the first premium thereon. Therefore in this case the delivery of the policy to the postal authorities was not a constructive delivery to the applicant. The *Babcock* case, moreover, distinctly and clearly recognizes that by an express provision in an insurance contract an insurer can legally and bindingly stipulate that the first premium on the policy must be *actually* paid before the contract is consummated.

For the above reasons we think a nonsuit was proper.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*