### 33897. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY *v*. MOORE.

DECIDED MAY 27, 1952—REHEARING DENIED JULY 28, 1952.

*Hardin & McCamy, Wm. F. Buchanan,* for plaintiff in error. *Walter H. Bolling, Mitchell & Mitchell,* contra.

CARLISLE, J. ■ Although it appears that the allegations in the defendant's original answer, referring to the dealings between Moore and Langston as to the payment of the premium, were stricken by the trial court on special demurrer, essentially the same facts were included in a subsequent amendment to the answer which the court allowed and ordered filed, and it does not appear from the record before this court that the plaintiff preserved any exception to the allowance of this latter amendment. Thus, viewed in the state in which the pleadings reached this court, at the time of the trial the defenses presented by the answer were: (1) the contract of insurance was void for a material misrepresentation in the application with reference to the applicant's use of intoxicants; (2) the first premium had not been paid as recited in the premium receipt. The defense that the application for insurance had never been approved, the major defense when the case was here before, was eliminated from the case by the defendant's admission in its answer that, although the policy was issued (and the policy would scarcely be issued if the application had not been approved), it had not been delivered. Thus, eliminating for the moment the question of the propriety of the recovery of the statutory penalty and attorney's fees, the questions for solution are narrowed, under the general grounds, to whether the contract for insurance was void for a material misrepresentation in the application, or whether the contract never became of force because the first premium had never in fact been paid.

In *National Life & Accident Ins. Co.* v. *Barnes,* 61 *Ga. App.* 730 (1) (7 S. E. 2d, 299), it was held that in applications for insurance the question, "To what extent do you now, or have you in the past, used intoxicants, morphine, cocaine, or other habit-forming drugs?" is "generally held to have reference to the 'habitual' or 'customary' use of such drugs or drinks, and does not refer to an 'occasional' or 'exceptional' use of such

drugs or drinks." Under this construction of the question, the applicant's answer "None" can not, under the evidence, be said to have amounted to a material misrepresentation. While there is evidence from which the jury could have inferred that the applicant was drunk at the time of the accident which resulted in his death, such intoxication was subsequent to the application. The only other evidence bearing upon the applicant's use of intoxicants at all was the testimony of one witness that he had on one occasion seen the applicant returning home when "he walked like a man that was a little full or about half sick," and it was the witness's impression that he had been drinking. This evidence did not demand, or even authorize, a finding that the applicant's answer to the question in the application was untrue, and the defendant's effort to nullify the contract of insurance upon the ground of a material misrepresentation was ineffective.

Under the decision of this court when the case was here before, the contract of insurance, evidenced by the "binder receipt" became of force when the application for insurance was approved. The approval of the application was admitted, as we have said. The binder receipt reciting the payment of the first monthly premium was introduced in evidence, and Langston, the defendant's soliciting agent, testified that, at the time the application was prepared and the premium receipt was issued on June 10, Moore delivered to him, Langston, his daily newspaper for which Langston paid him at the end of the month, and that they agreed that at the end of the month Moore would mark the newspaper account paid up and Langston would pay the first monthly premium. There was evidence that the records of the defendant company indicated that the first monthly premium had been paid; that the company accepted the agent's word as to the payment of the premium by the applicant and settled with the agent once a month for such premiums; that is, under the custom followed by the company with its agent, the agent was required to pay over to the company, between the first and tenth of the following month, the premiums which he had collected on insurance which he had written and sent in to the company in any one month. There was evidence that other records of the company, those of its cashier, indicated that the premium had never been paid. In its first answer to the plain-

tiff's petition, the defendant admitted payment of the first monthly premium, and although this admission was later stricken, counsel for the plaintiff read this admission into evidence. Under these circumstances, the jury was authorized to find that the premium had in fact been paid. See, in this connection, *Williams* v. *Empire Mutual Annuity &c. Ins. Co.*, 8 *Ga. App.* 303 (9) (68 S. E. 1082); and *Liberty National Life Ins. Co.* v. *Parrimore*, 70 *Ga. App.* 320 (28 S. E. 2d, 190), and cases cited.

It follows, therefore, that the jury were authorized to find, as they obviously did, that the insurance was in force at the time of the insured's death and was due and payable at the time of the trial.

■ As has been pointed out earlier, the plaintiff, after all the evidence was in, amended her petition so as to include the statutory penalty and attorney's fees provided for by Code § 56-706. In order to recover under this section, it is necessary that it appear that the insurance company's refusal to pay the loss was in bad faith, and the mala fides of the company is generally a question for the jury. *Liberty Mutual Ins. Co.* v. *A. C. L. R. Co.*, 66 *Ga. App.* 826, 834 (9 S. E. 2d, 377), and cases cited. The insured died on June 12, 1949. By March 21, 1950, at which time formal demand was made for payment, payment had not been made. On July 31, 1950, suit was filed by the plaintiff. The defendant in its answer first admited that the first monthly premium had been paid, but contended that the application for insurance had never been approved, approval of the application constituting a condition precedent to the insurance of the applicant. By amendment, these positions taken by the defendant were reversed, and it was then contended that, although the application had been approved, the premium had never been paid. Certain marks on the application, which was in the possession of the defendant, when explained by the defendant's own witnesses, showed that in fact the application had been approved and that this evidence was before the defendant at the time the defense of "no approval" was made. In addition to reversing its positions, the defendant set up the defense of a material misrepresentation in that the applicant had answered "None" to the question as to the extent to which

he used or had used intoxicants. The defendant produced no evidence to substantiate this defense. Counsel for the plaintiff illustrated the defendant's changes in position by reading the appropriate pleadings into evidence, and in addition read other parts of the defendant's pleadings, which showed that the defendant had also replied to the plaintiff's notice to produce the policy that it could not do so as it had never been issued, a position which also was reversed by the defendant's admission that the policy had in fact been issued but had not been delivered. The defendant introduced no evidence in explanation of its varied changes of position in its defenses to the suit and the answers to such questions as to whether the policy had been issued, the application approved, the premium paid, were certainly within its knowledge or easily ascertainable; and certainly when it is considered that the insured died on June 12, 1949, and the case did not go to trial until April 5, 1951, the defendant had had ample time to investigate and establish some basis, if basis there was, for its contention that the applicant had misrepresented his use of intoxicants. In the light of the foregoing circumstances, the jury were authorized to find that the defendant's refusal to pay the loss covered by the contract of insurance was in bad faith. On the question of utilizing admissions in pleadings as evidence although stricken from the pleadings, see *Alabama Midland Railway Co.* v. *Guilford,* 119 *Ga.* 523 (46 S. E. 655).

■ From what has been said in division 1 of this opinion concerning the agreement between the applicant for insurance and the defendant's agent as to the payment by the agent of the first monthly premium, the exclusion of the evidence upon which error is assigned in special ground 1 (numbered 4) was harmless, and this ground is without merit.

■ Evidence showing the insured to have been intoxicated at the time of the accident which resulted in his death, and which was subsequent to the time of the issuance of the "binder receipt," in the absence of any evidence showing a prior habit of using intoxicants, in no way illustrated the falsity of the insured's representation made in the application as to his use of intoxicants at the time of, or prior to, the issuance of the receipt and the preparation of the application; nor would such evidence

illustrate any other issue in the case. The trial court did not, therefore, err in excluding the evidence to which exception is taken in special ground 2 (numbered 5).

■ In special ground 3 (numbered 6), error is assigned upon the trial court's refusal of the defendant's motion for a continuance, on the ground of surprise occasioned by the plaintiff's amendment adding allegations and a prayer for the statutory penalty and attorney's fees, after all the evidence had been introduced. A party may at any stage of the cause amend his pleadings in all respects, whether in matter of form or of substance. Code, § 81-1301. In view of the history of the case and the evidence on the hearing for a continuance, the trial court was authorized to determine that the defendant would not by a continuance be placed in any better position than it was at the trial to defend against the demand for the statutory penalty and attorney's fees, made in the plaintiff's amendment; and the trial court did not, therefore, abuse its discretion in overruling the motion for a continuance. *Weil* v. *Schoenberg*, 36 *Ga. App.* 706 (137 S. E. 842); *Deen* v. *Wheeler*, 7 *Ga. App.* 507 (67 S. E. 212).

The trial court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner, P.J., and Townsend, J., concur.*

ON MOTION FOR REHEARING.

Counsel for the defendant in their motion for a rehearing lay great stress upon the rule that, where admissions have been made in pleadings which are stricken subsequently, they can not be used as solemn admissions in judicio so as to estop the pleader's denial or explanation of such admissions. No such effect was given the defendant's admission of payment of the premium in this case. The admission of payment in the original answer, which was later stricken, was introduced in evidence by the plaintiff and was entitled to be considered along with the various other pros and cons on the question of payment of the premium. No other effect was given or intended to be given by this court to such admission.

As we have already pointed out in the original opinion in this case, it is the habitual or customary use of intoxicants which would materially increase the risk to the insurer, so that a

misrepresentation by an applicant as to such use would render the contract of insurance voidable at the option of the insurer. The customary and habitual use of intoxicants might well be considered by the insurer to have reached the proportions of a malady, but not so where there had been an occasional or exceptional use of intoxicants. The only direct evidence of the insured's having ever used intoxicants was that of his drunkenness on the day of his death, and the facts of this case are totally unlike that line of cases exemplified by Stipcich *v.* Metropolitan Life Insurance Co., 277 U. S. 311 (48 Sup. Ct. 512), where, between the time of the application and the time of the policy, the applicant discovered himself to be afflicted with a serious malady, duodenal ulcer, and unlike those cases in which it is provided that the applicant shall be in good health at the time of the delivery of the policy and the payment of the premium. *McKenzie* v. *Northwestern Mutual Life Ins. Co.,* 26 Ga. App. 225 (105 S. E. 720).

We have held in the original opinion that there was evidence from which the jury was authorized to find that the first premium was actually paid; and this being so, the following cases relied upon by counsel for the defendant are entirely beside the point: *Scurry* v. *Cotton States Life Ins. Co.,* 51 Ga. 625; *Metropolitan Life Ins. Co.* v. *Thompson,* 20 Ga. App. 706 (93 S. E. 299); *Reese* v. *Fidelity Mutual Life Association,* 111 Ga. 482 (36 S. E. 637); *Clark* v. *Mutual Life Ins. Co.,* 129 Ga. 571 (59 S. E. 283); *Reliance Life Ins. Co.* v. *Hightower,* 23 Ga. App. 573 (99 S. E. 140); *Penn Mutual Life Ins. Co.* v. *Blount,* 37 Ga. App. 756 (142 S. E. 183); *Penn Mutual Life Ins. Co.* v. *Blount,* 165 Ga. 193 (140 S. E. 496). In none of those cases was such a finding authorized.

*Rehearing denied. Gardner, P.J., and Townsend, J., concur.*