Louella **STARLING**, Appellant,

v.

**GULF LIFE INSURANCE COMPANY,**
Appellee.

No. 24295.

United States Court of Appeals
Fifth Circuit.

Sept. 7, 1967.

Lee R. Williams, Douglas, Ga., Ewing & Williams, Douglas, Ga., of counsel, for appellant.

Larry E. Pedrick, Waycross, Ga., Joseph D. Tindall, Jr., Atlanta, Ga., for appellee.

Before TUTTLE, THORNBERRY and GODBOLD, Circuit Judges.

THORNBERRY, Circuit Judge.

Appellant brought suit against appellee, Gulf Life Insurance Company, in the Superior Court of Coffee County, Georgia

on two policies of insurance issued on the life of her husband, William P. Starling, who died on February 16, 1963. The policies had face values of $5,000 and $11,000 respectively. The complaint alleged that Gulf Life wrongfully refused to pay death benefits due on the two policies. In addition, appellant asked for a twenty-five per cent penalty and reasonable attorney's fees under section 56–1206 of the Georgia Code.[1] Gulf Life defended by asserting that the policies had lapsed for nonpayment of premiums and that the insured had made material misrepresentations in certain applications for reinstatement. The suit was timely removed to the court below on the basis of diversity of citizenship.

■■■ The district court directed verdicts in favor of Gulf Life on the $11,000 policy and on appellant's request for penalty and attorney's fees but submitted the claim based on the $5,000 policy to the jury. The jury awarded recovery on the $5,000 policy, and Gulf Life did not appeal from the judgment entered on this verdict. Appellant contends here that the trial court erred in granting Gulf Life's two motions for directed verdict and in denying her motion for new trial.[2] We affirm as to the directed verdict in favor of Gulf Life on the $11,000 policy; but as to the verdict directed against appellant's claim for penalty and attorney's fee on the $5,000 policy, we reverse and remand.

I.

Appellant relied primarily on the testimony of J. W. Moree, one of appellee's former agents. Moree testified that he had been employed by Gulf Life as an agent in Lakeland, Florida, that he had "serviced the account" of the insured while employed in Lakeland, and that he was authorized to collect and did collect premiums on the two policies involved in this case.[3] He further testified that in

1. Ga.Code Ann. tit. 56, § 1206 (1962) provides as follows:

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 per cent. of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the case against the insurer. The amount of such reasonable attorney's fees shall be determined by the trial jury and shall be included in any judgment which is rendered in such action: Provided, however, such attorney's fees shall be fixed on the basis of competent expert evidence as to the reasonable value of such services, based on the time spent and legal and factual issues involved, in accordance with prevailing fees in the locality where such suit is pending: Provided, further, that the trial court shall have the discretion, if it finds such jury verdict fixing attorney's fees to be greatly excessive or inadequate, to review and amend such portion of the verdict fixing attorney's fees without the necessity of disapproving the entire verdict. The limitations contained in this section in reference to the amount of attorney's fees are not controlling as to the fees which may be agreed upon by the plaintiff and his attorney for the services of such attorney in the action against the insurer.

2. Appellant joined her motion for new trial with a motion for judgment notwithstanding the verdict. The latter motion was a nullity, however, because appellant failed to move for a directed verdict. A motion for directed verdict is a prerequisite to a motion for judgment notwithstanding the verdict by the plain words of Fed.R.Civ.P. 50(b), and the courts and commentators have so construed the rule. See, e. g., Hernandez v. Employers Mut. Liab. Ins. Co., 5th Cir. 1965, 346 F.2d 154; Indamer Corp. v. Crandon, 5th Cir. 1954, 217 F.2d 391; Federal Savings & Loan Ins. Corp. v. Kearney Trust Co., 8th Cir. 1945, 151 F.2d 720, 727; 5 J. Moore, Federal Practice ¶ 50.08, at 2357 (2d ed. 1966); Wright, Federal Courts § 95, at 370 (1963). Since there was no motion for judgment n. o. v. in a legal sense, this Court is without power to grant one and therefore must confine its consideration to the motion for new trial. We must operate under this limitation even though the verdicts unfavorable to appellant were directed. Globe Liquor Co. v. San Roman, 1948, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177.

3. Moree's authority as an agent for the company is undisputed.

1962, after collecting premiums on these two policies and furnishing receipts, he failed to remit them to the company before the grace period had expired. As a result, when Gulf Life notified him that the policies had lapsed, he persuaded Mr. Starling to sign two blank applications for reinstatement after telling him what he wanted and after obtaining an affirmative answer to a vague question about the insured's health.[4]

■ Certain documents were introduced in evidence and identified by Moree as receipts given by him for payments by the insured before the policies could have lapsed in 1962. While appellee questioned whether the receipts really proved this point, they were sufficient when considered with Moree's testimony to sustain a jury finding that the premiums were paid before the policies could have lapsed in 1962.

■ While appellee was unable to negate the thrust of Moree's testimony, it did present an effective defense to the claim based on the $11,000 policy. This policy had apparently lapsed once before for nonpayment of premiums because the company introduced in evidence an application for its reinstatement, dated September 26, 1961 and showing the insured's home address as being in Pearson, Georgia. There is no evidence in the record connecting Moree with this particular application: He testified that he serviced Mr. Starling's account while both were living in Lakeland, and his testimony about the collection of premiums and applications for reinstatement related to a period of time in 1962. Since there is no evidence to the contrary, we must assume that the $11,000 policy lapsed for nonpayment of premiums in 1961 and that the insured signed the 1961 application for reinstatement with full knowledge of the representations contained therein.

The 1961 application stated that the insured was then in good health and free from all disease or ailments, that since issuance of the policy he had suffered from no illnesses nor been sick from any cause, that he had not consulted, been prescribed for or attended by a physician for any cause, and that he had not been

---

4. Under cross-examination, Moree insisted that he collected the premiums on time and that the policies had never lapsed:

Q Did you know that it wasn't lapsed?

A Yes, sir. I knew that it was coming out of my accounts. I knew that it had come out of my accounts.

Q That's right?

A And I also knew, Mr. Pedrick, that I had collected the money. That is just a form to get them to sign and submit to the company.

Q Were you deliberately trying to defraud somebody?

A No, sir.

Q Wouldn't that be a fraud?

A I don't think so. I am not an attorney.

* * * * *

Q You didn't tell the district office or home office that he was not in arrear, did you?

A No, sir. I didn't say anything to anybody about it. If that is what happened, I should have collected the money and through a mistake I had not turned it in and the company automatically lapsed the insurance. The money was paid and I had not turned it in. R., 44–45.

As to the way in which the application for reinstatement was handled, Moree testified as follows:

A At the time this re-instatement application was taken Mr. Starling was on the job working. I went to the place of business to see him, and he was quite busy and I spoke to him and stood around a few minutes for him to get an opportunity so I could see him for a second and he said "I will be with you in just a minute," and in the course of about ten minutes he didn't have a customer at that particular time and I went over to the counter where he was and told him what I wanted, and he said: "Give me the form and I will sign it." I said: "O.K.", and then I handed it to him, and he signed it and I left. I asked him one question, I said: "Mr. Starling, is your health as good now as it was when your insurance went out of benefits?" He said: "Yes." And then I left and I filled the application out. I witnessed the man's signature and I filled out the application. R., 20–21.

an inmate of any hospital.[5] The company produced witnesses who testified that between the original issuance of the policy and the date of reinstatement, the insured had been attended by three different physicians, that he had been diagnosed as suffering from gastritis with secondary anemia, that he had been hospitalized as a result of this illness, that on another occasion during the same period he had undergone surgery for removal of a fistula, and that he had been forced to enter the hospital several times for blood transfusions. A doctor who examined Mr. Starling on September 12, 1961 said that he was suffering from anemia blood loss presumably caused by a marginal ulcer and that he had advised the insured of his diagnosis. This same doctor offered the general opinion that the insured was not in good health, that "he was a very sick man." An underwriting official for Gulf Life testified that the applications for reinstatement signed in 1961 and 1962 would have been rejected if these developments had been revealed.

## II.

■ Since this is a diversity case, we apply the substantive law of Georgia. Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We first consider the district court's decision to direct a verdict against appellant on the $11,000 policy. Presumably, the verdict was directed on this issue because the only inference which could logically be derived from the evidence was that material misrepresentations were made in the 1961 application and that these misrepresentations substantially increased the risk to the insurer. It is not difficult to find authority to support the action of the district court.

■ Under Georgia law, material misrepresentations contained in applications for reinstatement of policies are regarded in the same way as those made in original applications. New York Life Ins. Co. v. Odom, 5th Cir. 1937, 93 F.2d 641, cert. denied, 1938, 304 U.S. 566, 58 S.Ct. 948, 82 L.Ed. 1532; Life & Casualty Ins. Co. v. Davis, 1940, 62 Ga.App. 832, 10 S.E.2d 129; New York Life Ins. Co. v. Hollis, 1933, 177 Ga. 805, 171 S.E. 288; Phillips v. New York Life Ins. Co., 1931, 173 Ga. 135, 159 S.E. 696. Thus, insight into the problem before us would be afforded by a Georgia case involving false representations made in an application for life insurance. In Franklin Life Ins. Co. v. State Neon Sign Co., 5th Cir. 1964, 329 F.2d 456, the application in question stated that the insured had not suffered from pain in the chest, palpitation, shortness of breath, heart attack, heart murmur, high blood pressure, varicose veins, or any other disease of the heart or blood vessels. However, it was proved that he had been hospitalized because of coronary thrombosis with myocardial infarction. The district court had refused to direct a verdict for the insurer or to grant its motion for judgment notwithstanding the verdict. On appeal, this Court held that the misrepresentations were material and were not a proper subject for jury inquiry. In reaching this result, Judge Bell summarized the Georgia law on misrepresentations in applications for life insurance:

> The law of Georgia is that a false representation contained in an application for insurance which changes the nature, extent, or character of the risk voids the policy. §§ 56–820, 56–908, Code of Georgia, 1933. Code § 56–908 speaks in terms of a material misrepresentation, and Preston v. National Life & Accident Ins. Co., 1943, 196 Ga. 217, 26 S.E.2d 439, 148 A.L.R. 897 construes these statutes to mean a substantial increase in the risk. See our cases of Mutual Benefit Health & Accident Association v. McCranie, 5 Cir.,

---

5. The applicant further agreed that the policy would be contestable for two years from the date of reinstatement. The policy was reinstated on November 28, 1961; the insured died on February 16,

1963. Appellant does not contend that refund of the premiums together with interest was not tendered and the policy not contested within the two-year period.

1949, 178 F.2d 745; and Martin v. Metropolitan Life Insurance Company, 5 Cir., 1951, 192 F.2d 167 in this connection. And where, as here, the applications for insurance are attached to and made a part of the policies, it is not necessary to show any knowledge of the falsity by the insured because there is no issue of fraud or bad faith. It is only necessary to show that the applicant made a material representation that was untrue.

■ In the instant case, it is not seriously disputed that the insured's policy lapsed for nonpayment of premiums in 1961; and there is no evidence to suggest that the company or its agent was guilty of any irregularity in obtaining the application for reinstatement. Further, the evidence that misrepresentations regarding the insured's health substantially increased the risk to the insurer is uncontradicted. Therefore, the district court correctly directed a verdict in favor of Gulf Life on the $11,000 policy.[6]

### III.

The only factor distinguishing appellant's suit on the $5,000 policy from her suit on the $11,000 policy was the testimony of J. W. Moree. Since the representations contained in the 1962 applications for reinstatement had the same untruthful quality as those in the 1961 application, the district court would have been compelled to direct a verdict against appellant on the $5,000 policy but for statements by Moree to the effect that the premiums had been paid before the company claimed a lapse. This testimony created a submissible issue, and the jury responded by awarding recovery. While the judgment entered on that verdict is final, the question remains whether the district court properly directed a verdict against appellant as to penalty and attorney's fees on the $5,000 policy.

Section 56–1206 of the Georgia Code provides that if an insurer refuses to cover a loss within sixty days after demand and if there is a finding that refusal was made in bad faith, then damages not to exceed twenty-five per cent of the insurer's liability plus reasonable attorney's fees may be assessed. Appellee contends that under all the facts it had a right to defend against the suit on the policy and that there was no evidence of bad faith on its part in refusing to pay. It places primary reliance upon Interstate Life & Accident Ins. Co. v. Williamson, 1964, 220 Ga. 323, 138 S.E.2d 668, 669–670, wherein the Supreme Court of Georgia answered certified questions concerning section 56–1206:

> In an action to recover penalties and attorney's fees for the refusal of an insurer to pay a claim it must be shown that the refusal was in "bad faith," Code Ann. § 56–1206, and the burden is on the insured to show that such refusal was made in bad faith. * * * "Bad faith," as the term is defined * * * means "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy."

> \*     \*     \*     \*     \*     \*

> A defense going far enough to show reasonable and probable cause for making it would vindicate the good faith of the company as effectually as would a complete defense to the action.

In light of the obvious misrepresentations in the 1962 application for reinstatement of the $5,000 policy and of all the circumstances surrounding Mr. Starling's policies, it would appear that Gulf Life had reasonable cause for refusing to pay. In the *Williamson* case, however, there was no alleged misconduct on the part of the agent, i. e., the question of an agent's responsibility for the insurer's refusal to pay was not before the court. This factor of the agent's responsibility is present in the instant case and makes it necessary for us to consider another Georgia decision.

---

6. See Planters Mfg. Co. v. Protection Mut. Ins. Co., 5th Cir. 1967, 380 F.2d 869, for the Fifth Circuit's most recent explication of the federal test for a directed verdict.

In Reserve Life Ins. Co. v. Ayers, 1961, 217 Ga. 206, 121 S.E.2d 649, 655, the supreme court held that the actual knowledge of an insurance company's agent is imputable to the company. The facts of the case were that the insured had given truthful oral answers revealing prior hospitalization but that the agent had filled in the application with untruthful answers. In the suit on the policy, the jury allowed recovery of the face value plus penalty and attorney's fees. On appeal, the insurer urged unsuccessfully that the agent's knowledge of his own misconduct should be imputed to the company as constructive notice rather than actual knowledge:

> The point is important because if the defendant had, in a legal sense, actual knowledge that the plaintiff had not made untruthful answers to the questions propounded by the application, the refusal to pay the loss upon that ground was frivolous and unfounded.

> This Court held in Hillyer v. Brogden, 67 Ga. 24, 26, that actual knowledge of an agent of facts within the scope of his agency was vicariously the principal's knowledge, and has adhered to that ruling consistently ever since.

> The rule is applicable to all agents alike, including insurance agents.

Having knowledge in a legal sense that Mr. Ayers, the insured, had not given untruthful answers, the company could not have refused to pay in good faith. Thus, the bad faith contemplated by the statute was attributable to it.

 In the instant case, if the question of penalty and attorney's fees had been submitted to the jury under a proper charge, it could have based a finding in appellant's favor on Moree's knowledge of his own responsibility.[7] It could have found that Moree knew the premiums were paid before the alleged lapse.

If he knew this, he would also have known that the application for reinstatement was unnecessary. Thus, the *Ayers* case requires us to remand the question of penalty and attorney's fees on the $5,000 policy for submission to the jury. While the court in that case emphasized the fact that the agent had entered untruthful answers after receiving truthful ones, the rule adopted should apply with equal force where an agent is solely responsible for the company's having alleged that a lapse occurred. On remand, the question of what attorney's fees would be reasonable in the suit on the $5,000 policy must be submitted to the jury along with the question of appellee's liability under section 56–1206.

Affirmed in part; reversed and remanded in part.

---

7. The Georgia courts have said repeatedly that the question of penalty and attorney's fees is ordinarily one for the jury. See, e.g., Millers Nat'l Ins. Co. v. Waters, 1958, 97 Ga.App. 103, 102 S.E.2d 193; National Life & Accident Ins. Co. v. Moore, 1952, 86 Ga.App. 618, 72 S. E.2d 141; Roberts v. Employers Ins. Co., 1949, 79 Ga.App. 611, 54 S.E.2d 465.