## 29597. LIBERTY NATIONAL LIFE INSURANCE COMPANY *v.* PARRIMORE.

SUTTON, J. 1. The motion to dismiss the writ of error, because the plaintiff in error did not serve the defendant in error with a copy of its brief within the time prescribed by the rules of this court, is without merit, and is denied.

2. The provision of the policy sued on, that in the event of permanent loss of the sight of both eyes the insurer would pay the insured the face amount of the policy as shown in a designated schedule, but that such disability benefit "shall be granted only if such injuries were sustained . . solely as the result of disease contracted after or injuries sustained after the date of the issuance of this policy," is a valid and binding contractual obligation between the parties to the contract; and where the undisputed evidence on the trial of the case showed that the plaintiff's permanent loss of sight in both eyes, for which disability the suit was brought, was caused by a disease of cataracts which originated before the date of the issuance of the policy, the plaintiff was not entitled to recover. The court erred in overruling the defendant's motion for new trial.

*Judgment reversed. Felton, J., concurs. Stephens, P. J., dissents.*

DECIDED DECEMBER 4, 1942. REHEARING DENIED DECEMBER 17, 1942.

*J. D. Gardner, W. L. Bryan,* for plaintiff in error.

*Frank S. Twitty,* contra.

STEPHENS, P. J., dissenting.  1.  The bill of exceptions is not subject to dismissal because the plaintiff in error did not serve the defendant in error with its brief within the time prescribed by the rules of this court.

2.  William R. Parrimore sued the Liberty National Life Insurance Company to recover on a policy which provided that upon the loss by the insured of the sight of both eyes the company would pay to him the face amount of the policy.  The plaintiff alleged that the policy was issued on November 6, 1939, and insured the life of the plaintiff in the face amount of $510; that such policy provided that in the event of the permanent loss of the sight of both eyes the company would pay to the plaintiff the face amount of the policy; that on the date the policy was issued the plaintiff was in sound health, but thereafter, and while the policy was in force, he suffered on or about December 1, 1940, the permanent loss of his sight, and since that time has been blind; that the plaintiff has fulfilled all conditions of the policy required of him; that on December 15, 1940, he delivered to the company due notice and proof of the fact that he had suffered a permanent loss of his eyesight, and that the company has failed and refused to pay him and has denied liability under the policy.  The plaintiff by an amendment alleged that the refusal of the company to pay was in bad faith, and that he was entitled to recover, in addition to the amount of the policy, $510, 25 per cent. of such sum as damages, together with $150 as reasonable attorney's fees.  The plaintiff alleged that more than sixty days elapsed between the submission by him of proof of disability and the defendant's refusal to pay and denial of liability and the date of the filing of the suit.

The defendant denied liability and alleged that the policy was void; that the defendant was not liable to the plaintiff because, at the time of the issuance of the policy, the plaintiff was not insurable on account of his age which he misrepresented; that the plaintiff, in his application for the insurance, had made false statements relatively to his age and the condition of his health and his eyes at the time, and relatively to having consulted a physician before the application; that the defendant was not liable under the terms of the policy since it appeared that the insured's disability was the

result of disease contracted before the issuance of the policy; and that it was not liable for the principal amount of the policy as the insured was not in sound health when the policy was issued. The trial resulted in a verdict for the plaintiff for $510 principal, $127.50 damages, and $100 attorney's fees. The defendant's motion for new trial was overruled and it excepted.

The policy contained the following provisions: "Upon receipt during the lifetime of the insured of due proof that the insured has suffered any of the physical impairments specified in this paragraph and survived such impairment by thirty days, the company will grant the following disability benefits: (1) In the event of . . the permanent loss of the sight of both eyes, the company will pay the insured the 'face amount' of this policy. . . The disability benefits described in this paragraph shall be granted only if such injuries were sustained, (a) while this policy is in full force and effect, and (b) before the insured attains age seventy, and (c) solely as the result of disease contracted after . . the date of the issuance of this policy. . . This policy shall not take effect prior to the date hereof. . . Or if (3) the insured at the time of delivery and acceptance of this policy is not alive and is not in sound health . . then in any of such events the liability of the company hereunder shall be limited to the return of the premiums paid hereon unless reference to such . . lack of sound health . . is indorsed on this policy by the company; and it is expressly agreed that the issuance of this policy without such indorsement shall not be considered a waiver of this provision should there have been any such . . lack of sound health. . . This policy contains the entire agreement between the company and the insured. Its terms can not be changed or its conditions varied, except by a written agreement signed by the president or secretary of the company. No other person shall have the power to make or alter contracts, waive forfeitures," etc.

While the evidence introduced by the defendant tended to substantiate the contentions made by it, and would have supported a finding in its favor relatively to the defenses set up, the jury were authorized to find that the plaintiff was not actually asked the question propounded in the application, which was not attached to the policy as a part of it; that the plaintiff could not read and write very well, but was an illiterate person; that he signed his

name to the application by mark; that he did not falsely represent his age, and did not make any other wilful and false statements to procure the insurance. There was evidence from which the jury were authorized to find, while the plaintiff's loss of eyesight was caused by cataracts, that when he applied for the policy the disease had not advanced to such a stage as to be noticeable, and that he was examined by a physician for the insurance company, who reported that his eyesight was normal. The evidence supported a finding that the plaintiff's eyesight was normal, or practically so, at the time of the application. The evidence did not demand a finding that when the policy was applied for and at the time it was issued the plaintiff knew that he had cataracts, and it did not demand a finding that the plaintiff's eyes were to any extent diseased by cataracts at that time. The testimony of the physician who examined the plaintiff for the company, together with the testimony of the agent who took the application and the testimony of the plaintiff, authorized the jury to find that at the time the policy was applied for and issued the plaintiff did not have a disease which resulted in the loss of his eyesight. There was testimony of physicians that, about two years before the issuance of the policy, the plaintiff had been examined by them relatively to obtaining welfare aid which was granted to those whose eyesight was impaired, and that these physicians found his sight in one eye almost gone as the result of cataract; and that eyes diseased with cataracts do not get better unless an operation is performed. It did not appear from the evidence that an operation had been performed on the plaintiff's eyes after such examination and before the application for the policy. The verdict for the plaintiff was authorized.

3. While it is inferable from the evidence that the condition of the plaintiff's eyes did not arise until after the issuance of the policy, and that the plaintiff was entitled to recover as specified in the policy, although a physician testified that on March 25, 1937, before the issuance of the policy, he examined the plaintiff's eyes and found that he was blind in one eye and that the vision in the other was considerably impaired; that the plaintiff's trouble at the time was cataracts in both eyes; that this physician, after the plaintiff's application for benefits under the policy had been filed. filled out a blank for the insurance company with reference to the

plaintiff's claim for total disability, which communication to the company was made February 14, 1941, at the company's request; that the insured came to this physician for a statement with reference to his eyes for the company; that to the best of the doctor's recollection this was sometime in the latter part of 1940, and assuming that this physician in his report to the company stated the result of his previous examination of the insured, such evidence, when considered in connection with the other evidence in the case, did not demand a finding that the company, in refusing to make payment to the plaintiff within the required time, did not act in bad faith. Therefore the evidence authorized a finding that the company, in not making payment as required, acted in bad faith, and also demanded a finding that the plaintiff was entitled to recover, in addition to the amount claimed as compensation for his injuries, an amount representing a penalty and attorney's fees.