30273. LIBERTY NATIONAL LIFE INSURANCE CO. *v.* PARRIMORE.

DECIDED NOVEMBER 24, 1943. REHEARING DENIED DECEMBER 14, 1943.

*J. D. Gardner, W. L. Bryan,* for plaintiff in error.
*Frank S. Twitty,* contra.

SUTTON, J. This was an action upon the disability provision of a life insurance policy issued by the defendant to the plaintiff, which provided, among other things, that upon receipt by the company of due proof that the insured had suffered the permanent loss

of the sight of both eyes, the company would pay the face amount of the policy. The policy further provided that the disability benefits would be granted only if such injuries were sustained while the policy was in force, before the insured attained the age of 70, and "solely as the result of disease contracted after or injuries sustained after the date of issuance of this policy."

When this case was here before, *Liberty National Life Insurance Co. v. Parrimore,* 68 *Ga. App.* 623 (23 S. E. 2d, 541), it was held that since the disability-benefit provision of the policy provided that it would be granted only if the injuries were sustained "solely as the result of disease contracted after or injuries sustained after the date of issuance of the policy," and since the undisputed evidence before the court at that time showed that the plaintiff's permanent loss of sight, the disability for which the suit was brought, was caused by a disease of cataracts which originated before the date of the issuance of the policy, the plaintiff was not entitled to recover, and the court erred in overruling the defendant's motion for a new trial.

On the last trial of the case in the court below, the defendant stated it was not insisting upon the defense set out in its answer that there was fraud in the procurement of the policy; and stated that the only defense relied upon was that the disability for which the suit was brought arose prior to the date of the issuance of the policy.

There was testimony by the plaintiff to the effect that in 1937 his eyes became "smoky" and he applied to the welfare department of Thomas County for assistance on account of the condition of his eyes. He saw Dr. I. W. Irwin who told him he might get all right, but he doubted it. Dr. John T. King looked at his eyes and told him they would clear up in a few days, if he would have his teeth pulled, and take a purgative. Sometime after 1937, he had his teeth pulled, and his eyes cleared up, and he did not have any more trouble with them, and was able to see all right at the time the policy was issued in 1939. Dr. D. P. Belcher examined him for the insurance company at the time the application for the policy was made, and also examined him sometime later, and he knew the insured could see all right. The policy was issued on November 6, 1939, and about a year later, he first lost his sight, and had

not been able to see since that time. No doctor ever told him he had cataracts on his eyes, or what was the matter with them.

Dr. D. P. Belcher testified to the effect that he examined the plaintiff at the instance of the insurance company on October 23, 1939, when the application for the policy was made, and that he did not observe anything to cause him to suspect that there was anything wrong with the plaintiff's sight. That he examined him for another company on May 1, 1940, and was directed to look especially as to the plaintiff's eyes, and he examined the plaintiff with Snelling cards, and the plaintiff's sight was good enough for him not to suspect that any thing was wrong with his eyes. He noticed the squinting of the plaintiff's eyes and asked him about his eyesight and the plaintiff told him it was all right. He did not examine the plaintiff's eyes very minutely.

R. M. Howard testified to the effect that he was employed by the defendant and took the application for the policy in question, and that at the time the application was taken, he would say that the plaintiff's sight was normal because he had seen him writing figures on a tablet.

There was testimony from Dr. I. W. Irwin and Dr. W. P. Rhyne to the effect that they examined the plaintiff on August 14, 1937, and at that time he had an immature cataract on his right eye and was totally blind in his left eye, and that they informed him of his condition. Dr. Irwin testified that a cataract never corrects itself, while Dr. Rhyne testified: "We know of very few cases, in the condition that Mr. Parrimore's eyes were in when I examined him, that have ever cleared up of their own accord. There is no method of treatment that we know of that will correct or clear up his condition. An operation will clear up the condition provided there is no disturbance in the retina. We could not see the retina on account of the exclusion in this particular case."

Dr. John K. King testified to the effect that he examined the plaintiff several times, beginning in 1937 and ending in 1941, and that in 1937 the plaintiff had no vision except the perception of light. His right eye had the beginning of a cataract. He did not treat the plaintiff's eyes in 1937, but informed him of their condition. That the plaintiff's sight was impaired to the extent of 100% in his left eye and 85- or 90% in his right eye, and that this condition had not improved.

The jury found in favor of the plaintiff. The defendant's motion for a new trial was overruled, and the exception here is to that judgment.

It is a well settled rule that the decision of an appellate court is controlling on a subsequent appeal where the pleadings and the evidence are substantially the same. *Taylor* v. *Felder,* 11 *Ga. App.* 742 (76 S. E. 75); *Cook* v. *Case Threshing Machine Co.,* 17 *Ga. App.* 543 (87 S. E. 832). But it is also well settled that "rulings by this court to the effect that the evidence on a former trial did not authorize a verdict are not final where such rulings result in the grant of a new trial. Such rulings are binding on the lower court only in the event that the evidence on another trial is the same, or substantially the same; and they do not preclude another trial." *Georgia Power Co.* v. *Moody,* 58 *Ga. App.* 252 (198 S. E. 342) And, "A judgment of reversal by this court of the judgment of a trial court, in the absence of direction, vacates that judgment in toto, and the case thereafter stands for trial de novo, as in the first instance." *Union Central Life Ins. Co.* v. *Trundle,* 65 *Ga. App.* 553, 556 (15 S. E. 2d, 909). In the present case, the judgment of the lower court on the former appeal was reversed without direction, and a new trial was ordered because the evidence before the court on that appeal did not authorize the verdict. When the case was tried again in the lower court, both the pleadings and the evidence were substantially different from the pleadings and the evidence in the former trial.

When the case was before this court on the previous appeal, the pleading of the plaintiff alleged that he had trouble with his eyes prior to the issuance of the policy, and that at the time he executed the application for the policy he told the defendant's agent of such impairment, and also told Dr. D. P. Belcher, who examined him for the defendant on the application for the insurance; that he had been having trouble with his eyes and that the doctor could have determined, by casual observance and examination, that his sight was impaired. Before the last trial, these allegations were stricken by amendment, and while they were introduced in evidence as admissions of the plaintiff, as the defendant had the right to do, they were not conclusive on him, and he had the right to explain or disprove them on the subsequent trial. *Watkins* v. *Price Mercantile Co.,* 45 *Ga. App.* 272 (164 S. E. 23), and cit. See also *Bray* v. *C. I. T. Corporation,* 51 *Ga. App.* 196 (7) (179 S. E. 925).

The verdict of the jury in the present case has the approval of the trial judge, and there is no contention that any errors of law were made; but the sole contention made by the plaintiff in error is that the judgment of this court on the former appeal is conclusive, and that the verdict was not authorized by the evidence.

The pleadings and the evidence being substantially different from the pleadings and the evidence on the former trial, the controlling issue is whether or not the evidence supported or authorized the verdict. It is well settled law that, "The determination of every issue of fact is exclusively for the jury, and whenever there is any evidence, however slight, to support a verdict which has been approved by the trial judge, this court is absolutely without authority to control the judgment of the trial court." *Seaboard Air-Line Railway Co.* v. *Jackson,* 38 *Ga. App.* 446, 447 (144 S. E. 223). In the present case, notwithstanding the testimony of the doctors that the plaintiff was totally blind in one eye and from 85- to 90% blind in the other eye in 1937 from cataracts, there was the positive testimony of the plaintiff: "My eyes cleared up after that. I was able to see in 1939. I could see all right at the time the policy was made. . . . After 1937, as soon as I got my teeth pulled, my eyes cleared up, and I didn't have any more trouble." In addition to the testimony of the plaintiff, there was the testimony of B. M. Howard, the agent of the defendant, who took the application for the policy in question, to the effect that he would say that the plaintiff's sight was normal at the time he made the application for the policy because he had seen the plaintiff writing on a tablet; and the testimony of Dr. D. P. Belcher that he examined the plaintiff at the instance of the defendant at the time the application for the policy was made, and that the plaintiff could read and write normally and did not show anything to make him suspect that there was anything wrong with the plaintiff's sight; that he examined the plaintiff for another company a few months later and was directed to look especially as to the plaintiff's eyes; that he examined the plaintiff's eyes with Snelling cards and the plaintiff's sight was "good enough" for him not to suspect anything was wrong.

While Dr. Irwin testified that a cataract never corrected itself without an operation, still Dr. Rhyne testified that they knew of

very few cases in the condition that the plaintiff's eyes were in when he examined him, that had ever cleared up of their own accord.

The evidence as to the condition of the plaintiff's eyes when he applied for and obtained the insurance was in conflict, and all conflicts in the evidence were matters solely for determination by the jury. The verdict of the jury in favor of the plaintiff has the approval of the trial judge. While the evidence would have authorized a finding in favor of the defendant, it did not demand such a finding, and we can not say as a matter of law that the judge erred in overruling the motion for a new trial based solely on the general grounds.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*