It is a well-settled rule that the decision of an appellate court is controlling on a subsequent appeal, if the pleadings and evidence are substantially the same. Where the evidence on the first trial was held by this court to be insufficient to authorize a jury to find for the petitioner's claim of reformation of a deed for alleged mutual mistake, and where the evidence on the second trial under the same pleadings, though in more detail, was substantially the same, it was not erroneous, on the second trial, to direct a verdict for the defendants on that issue.
 No. 15457. MAY 10, 1946. *Page 718 
This case was in this court on a previous appearance with all the pleadings now involved except an amendment referred to hereinafter. See Miller v. Rackley, 199 Ga. 370
(34 S.E.2d 438). The essential pleadings up to the last amendment of the petition are restated from that case. Under a deed conveying lands as being located "on the south side of the Alabama and Cave Spring public road," in the 3rd district and 4th section of Floyd County, Georgia, Miss Aurelia Rackley filed in the Superior Court of Floyd County a petition against Jeter Miller and Mrs. Maud Welch, seeking to enjoin them from trespassing upon a certain five-acre portion of said tract. The defendants answered and denied that the petitioner held title, which they alleged to be in Mrs. Beatrice M. Hernandez, for whom they were acting. Mrs. Hernandez intervened and alleged that the defendants were her agents and representing her in their acts, and that she held title to the lands under a deed subsequently executed by the same grantor, who conveyed to the petitioner, the lands in Mrs. Hernandez's deed being described as being "north of the paved highway leading from Cave Spring to Center, Alabama;" and she prayed that the petitioner be enjoined from interfering with her possession or exercising any acts of ownership. The petitioner amended her petition by alleging that, at the time the common grantor executed the deed to her, he instructed the attorney who prepared the deed that he desired to convey to her all of the lands described in the deed under which he held title; but, through ignorance of the fact that the road had been changed so as to run south of its original location, he used the same description as in the deed which had been executed to her grantor. She alleged that she believed that the description in the deed from her grantor, E. R. Minhinnette, to herself — in that it refers to the Alabama and Cave Spring public road — really expresses, if properly construed, the intention of the grantor; but, in view of the fact that the new paved highway is referred to as the "Alabama-Cave Spring paved highway" or "public highway," the intention of the grantee and herself is left somewhat ambiguous; and therefore the said deed should be reformed so as to express more clearly what was the evident intention of both the grantor and herself by inserting the word "old" before the words "Alabama *Page 719 
and Cave Spring Road." She prayed in the amendment that Mrs. Maud Welch, as administratrix of the estate of E. R. Minhinnette, deceased, be made a party defendant, and that the deed to the petitioner be reformed to express more clearly the real intention of the grantor and herself as to the property conveyed to her. Mrs. Maud Welch, as administratrix of the estate of E. R. Minhinnette, deceased, was made a party defendant, and filed an answer setting up that at the time of his death E. R. Minhinnette was in possession of and owned a described eastern portion of the tract to which the petitioner asserted title, and by his deed to the petitioner her intestate did not intend to convey any land north of the present paved highway leading from Cave Spring, Georgia, to Center, Alabama. She prayed that the petitioner's prayers be denied.
The previous decision of Miller v. Rackley, supra, reversed a verdict and judgment which had been found in favor of the plaintiff, and in headnote 1 of the majority opinion it was held: "Where a deed fixes the northern boundary of a tract of land as the `Alabama and Cave Spring public road,' the legal effect of such description, in the absence of a contrary intention being manifested in the instrument, is that the road open and actually in use by the public is the road intended by the parties, rather than the site of an old road. The language, being unambiguous, can not be aided by extrinsic evidence to extend the boundary to the old-road site, the sole remedy for such purpose being reformation of the deed. Although the petitioner prayed for reformation, there was no evidence to show any mutual mistake of the grantor and the grantee, and, reformation being a prerequisite to the relief sought, the verdict in her favor was unauthorized."
Following the ruling in Miller v. Rackley, supra, the plaintiff in the trial court amended her petition, in substance setting out that, if it should be determined that there is not sufficient evidence to reform the deed, and if it should be determined that the intervenor as administratrix of the estate of E. R. Minhinnette, deceased, is entitled to recover that portion of the lands between the old Cave Spring highway and the new highway and east of Melson road, the petitioner says that she is entitled, nevertheless, to recover for and have established as a lien against said lands the amount of $1086.45, consisting of $466.54 for repairs, $300 for construction of a barn, $38.41 for fire and tornado insurance premiums, *Page 720 
$28.25 for city tax, and $253.25 for one-half of State and county tax, claimed by her to have been expended in the improvement of the buildings on said property, which she claims she went into possession of in good faith, believing that she had title thereto.
In support of the last amendment as to claimed improvements, insurance, and taxes, the petitioner testified substantially as to the amounts and items set out in her pleadings. She testified that the rent received from the land went to pay back taxes. Her testimony as to the buildings being in a bad state of repair and whether the buildings needed repairs, or whether her claimed expenditures benefited the property, was controverted by some of the testimony for the defendant. On being recalled to the witness stand, the petitioner testified that $500 worth of the enhancement of the property was due to improvements made by her.
The issue as to amounts claimed to have been expended by the petitioner on the property was submitted to the jury, and its verdict in that respect was a finding for her in the sum of $300.
Three of the deeds or descriptions of property therefrom were introduced in evidence in each of the two separate trials. The deed from F. L. Miller, by E. R. Minhinnette, attorney in fact, to E. R. Minhinnette, dated October 6, 1936, and the deed from E. R. Minhinnette to Mrs. Beatrice Hernandez, dated April 8, 1939, were identical as to description, with one slight exception indicated here in brackets, and each read: "All that tract or parcel of land situated, lying and being in the 3rd district and 4th section of Floyd County, Georgia, and being all of the north half of lot number 861 [816] in said district and section lying west of the Fosters Mill road; all of the south half of lot number 796 in said district and section lying west of said Fosters Mill road; and the north half of land lot number 862, and the south half of lot number 795; also all the south half of lot number 861 lying west of the Fosters Mill road, and the southeast quarter of lot number 862; also all of the part of lot number 868 lying west of the Fosters Mill road and north of the paved highway leading from Cave Spring to Center, Alabama; also all of the east half of lot number 867 lying north of said Cave Spring and Center highway. The above-described land being tracts number 1, 2, 3, 9, and 10 of the F. L. Miller farm according to survey and plat made by C. H. Gilmour. *Page 721 
C. E., October, 1923. Tract number 1 containing 21 acres, tract number 2 containing 20.03 acres, tract number 3 containing 20.03 acres, tract number 9 containing 16 acres, and tract number 10 containing 21 acres." The deed from E. R. Minhinnette to Aurelia Rackley, dated August 19, 1938, introduced in evidence at both trials, purported to convey property described as follows: "All that tract or parcel of land situated, lying, and being in the 3rd district and 4th section of Floyd County, Georgia, and known and designated in the plan of said district and section as lots Nos. 935, the north half of lot No. 934, the west half of lot No. 933, and these parts of land lots Nos. 868, 867, and 866 which lie on the south side of the Alabama and Cave Spring public road, the whole tract conveyed comprising 130, more or less. There is included in this description that part of lot No. 935 which lies on the south side of the Cave Spring and Alabama road, . . etc."
In the last trial, the defendants introduced in evidence a security deed, under which the foreclosure took place preceding the deed of F. L. Miller to E. R. Minhinnette, dated February 24, 1919, and recorded July 9, 1936, in deed book 162 at page 543, of the deed records of Floyd County, with the description material to the case as follows: "All that tract or parcel of land situated, lying, and being in the 3rd district and 4th section of Floyd County, Georgia, and known and designated in the plan of said district and section as land lot Nos. 935, the north half of land lot No. 934, the west half of land lot No. 933, and these parts of land lots Nos. 868, 867, 866 which lie on the south side of the Alabama and Cave Spring public road. The whole tract conveyed comprising 130 acres, more or less. This conveyance being intended to cover 38 acres of lot No. 935, being all of said lot which lies on the south side of the Cave Spring and Alabama road."
At both trials, blue prints of plats were identified by a civil-engineer witness for the petitioner, and showed the location of the property in dispute as being between old and new roads or highways formerly and latterly known as the "Cave Spring [Georgia] and [Center] Alabama public road." This witness testified that "the present paved highway from Cave Spring to Center, Alabama. was built about the year 1925. Certain portions of the old road [are] still used up to the Melson road."
A pertinent paragraph of the statement of facts in the former *Page 722 
appearance of this case is restated. It was conceded by the parties that, under the deed to the common propositus, he held title to all of the lands south of the old road, and that, prior to the conveyance to the petitioner, a new and paved highway had been constructed south of the old road, the property in dispute being north of such new road and south of the old road. There was testimony on the trial of the case as to possession of the five acres in dispute, by agents of the petitioner and also of Mrs. Hernandez, and conflicting testimony as to whether Minhinnette, after deeding to the petitioner, remained in possession for her or otherwise. The respective deeds to the petitioner and Mrs. Hernandez were in evidence, but only the description of the property conveyed by each deed, together with the dates of the deeds, is set forth in the brief of the documentary evidence, the description of the roads varying as hereinbefore mentioned.
On the previous appearance of this case in this court,Miller v. Rackley, supra, it was held: "The evidence compels the view that the old road had been abandoned in 1928, and that a new paved highway on the south thereof had become the only Alabama and Cave Spring public road actually in use by the public at the time of the execution of the deed to the petitioner in 1938. This being true, it necessarily follows from the authorities above discussed that the description here involved is in law unambiguous, and means that the new paved highway, and not the old road, must be taken as the northern boundary of the lands conveyed. The record is silent as to any mutual mistake of the parties as to the boundary expressed in the petitioner's deed and, hence, there was no basis for reformation of the instrument. Reformation being a prerequisite to the relief sought, the verdict in favor of the petitioner was unauthorized." If the testimony at the first trial was insufficient to authorize a verdict in favor of the plaintiff, was that offered at the last trial sufficient to carry the question to the jury as to whether the deed should be reformed for mistake?
On the first trial Stephen Pettis testified for the petitioner: That he was a second or third cousin of Aurelia Rackley. He knew the Frank Miller farm all his life. The tract of land between the Alabama highway and the old Alabama road has always been considered a part of it. He took possession of that land for Aurelia Rackley and collected the rents for it. The tenant that was *Page 723 
there kept the place for the next year, and he rented it from Mr. Minhinnette while he was looking after it for Miss Rackley. Mr. Minhinnette died in the fall of 1942. Mr. Ingram was on the property, as a tenant of Miss Rackley, through Mr. Minhinnette. Mr. Ingram rented the property from Miss Rackley for the year 1943, through the witness. This witness, Stephen Pettis, did not testify at the second trial.
Ed Rich testified in behalf of the petitioner at both trials. On the first trial, he said in substance: In 1938 or 1939 he was talking to Mr. Minhinnette out on the farm where he was having his barn repaired. It was located between the old road and the new road and the Melson road. The witness asked him when Aurelia Rackley bought this place, and didn't know just whether Mr. Minhinnette said how long she owned it. The witness asked how much land Miss Rackley owned, and "Mr. Minhinnette turned around and pointed and said, `It crosses over yonder with the Montgomery farm and coming down the highway to Rocky Ridge, and coming back everything south of the old Alabama road.' He told me it was a hundred and some acres. He told me it was the little Frank Miller farm." On the second trial, Ed Rich testified to going with Mr. Minhinnette to fix the barn. At that time Mr. Minhinnette said a cyclone blew it over, and that he had to have it rebuilt for Aurelia and he had to have something done to the house, as a tree or limb had broken through it. While they were talking, Ed Rich asked, "How much land does Aurelia own here?" and Mr. Minhinnette said: "It corners over here at Montgomery Meadows and comes down the highway to the foot of Rocky Ridge road, and from there everything back to the Perry property."
On the first trial, S. L. Ingram testified for the petitioner: That he rented the little Frank Miller place in 1942 from Mr. Minhinnette. Mr. Minhinnette told the witness that he had conveyed the land to Miss Rackley, and made the statement on the day the land was rented. Ingram cultivated the land about seven acres. He rented the same land in 1943 from Stephen Pettis, who stated that he was acting for Miss Rackley. After the witness had turned about half the land, Mr. Miller came over and stopped him from cultivating it. Ingram wanted to buy the land from the old road south, and Mr. Minhinnette stated to Ingram that it belonged to Miss Rackley. On the second trial, Ingram testified: That he *Page 724 
rented the little Frank Miller farm from Mr. Minhinnette in 1942, and cultivated the part between the old and new highways. When Ingram rented it, Mr. Minhinnette said the old road was the line. After Ingram had rented it, he asked Mr. Minhinnette if he would sell it, and he said it belonged to Miss Rackley.
On the first trial, John Payne testified for the petitioner: That he lived on the Frank Miller farm in 1939 and 1940. Mr. Minhinnette never told him about Miss Aurelia Rackley's connection with the land. Miss Rackley came down and told him one time. He never saw her until December or January. He rented it from Mr. Minhinnette. He never knew Miss Rackley had anything to do with it. This witness did not testify at the second trial.
Jeter Miller testified as a witness for the defendants on the first trial: That he knew the little Frank Miller place. Mr. Minhinnette was his brother-in-law. He was 89 years old when he died. Miller knew the little tract between the highways. Mr. Minhinnette was in possession of it when he died. Miller had a conversation with Mr. Minhinnette about the disposition of the F. L. Miller Jr., place. He said he was going to give it to his daughter, Mrs. Hernandez. The new highway was built in 1928. Following that the old highway was abandoned, and Mr. Minhinnette had a barb-wire fence put up for his yearlings to run in. He remembered seeing the advertisement of the property of F. L. Miller in the paper to be sold at public sale. The security deed was dated in 1919, and the deed had been outstanding since. The witness stated that Mrs. Hernandez was his niece and that Mrs. Welch was his sister. He did not know anything about Mr. Minhinnette selling the land to Miss Rackley.
On the first trial James Maddox testified for the defendants: That he looked after legal work for E. R. Minhinnette. Miss Rackley came to his office, and introduced herself. She said that Minhinnette owned the Miller property, and that there was a loan against it for certain money Minhinnette owed to Mr. Tumlin. She was trying to see if she could get a loan for Minhinnette, stating that, if she could get the loan, Minhinnette was going to give her the farm. His recollection was that, since he represented Minhinnette, she wanted to bring him to Maddox's office and draw the deed; and that she stated, "It would be worth my while," if no objection was raised. Shortly after that he heard about the deed *Page 725 
being executed to Miss Rackley by Mr. Minhinnette. In April, 1939, Minhinnette came to the Maddox office for the purpose of making a deed to his daughter, Mrs. Hernandez, to certain property in which he retained a life estate. Minhinnette called attention of Maddox to the fact that the property conveyed was north of the new highway between Cave Spring and Center, Alabama. Maddox drew the deed referred to as certain tracts of the F. L. Miller farm, "also all of the part of lot number 868 lying west of Fosters Mill road, that is Melson road, north of the paved highway leading from Cave Spring to Center, Alabama, and also all of the east half of lot number 867 lying north of said Cave Spring and Center highway." Maddox distinctly remembered Minhinnette calling his attention that he was conveying the property which was north of the new paved highway. The witness Maddox did not testify at the second trial.
On the first trial, G. C. Langston testified for the defendants: That he worked on the little tract of land between the new and old road during 1939 or 1940, doing some ditching. Minhinnette directed the work and paid for it. Minhinnette said he put "Bee," referring to his daughter, Mrs. Hernandez, out to the asphalt highway. This witness did not testify at the second trial.
On the first trial, J. D. Beck testified for the defendants: That during 1941 he cultivated the tract between the old and new highway. His only dealings were with Minhinnette. This witness, did not testify at the second trial.
On the first trial, W. F. House testified for the defendants: That he lived on the Minhinnette farm in the years 1937, 1939, 1941, and 1942. During that time he had occasion to work on the strip of land between the old and new highways. He did some ditching. Minhinnette paid him. He did not rent anything south of the old highway. This witness did not testify at the second trial.
Tom Clemmons, tax collector of Floyd County, testified as a witness for the petitioner at both trials, and in substance his testimony was: That Minhinnette paid the taxes for a year or two on the F. L. Miller property, and advised that in the future it would be in Miss Aurelia Rackley's name. 125 acres of land were returned for taxes, and were changed on the records from Alice B. Miller's estate to Miss Rackley. Minhinnette continued to return *Page 726 
it as her agent and signed the return as agent for Miss Rackley.
On the first trial, Josh Tumlin testified for the petitioner: That he remembered the tract of land between the old and new highways. It was his understanding that the Miller place lies on the south side of the Alabama highway. He handled Minhinnette's rents for him all his life except one year. One year when they had the store rented, Minhinnette said to the witness: "You will have to give me a check for Aurelia's place — I have got to pay the taxes and accounts for it, I'll have to have it," and they paid him the amount. This witness did not testify on the second trial.
On the second trial, Will Langston testified for the petitioner: That in 1938 he lived with Minhinnette in the same house. He had a conversation with Minhinnette "with reference to his deeding to Miss Aurelia Rackley some property down there." On a trip to Rome together, Minhinnette brought some papers, which he said was "Frank Miller's deed," and read them, and Minhinnette said he was coming to Rome to deed Miss Aurelia Rackley the Frank Miller tract of land. The witness went with Minhinnette on the land, and while out there Minhinnette pointed out what he had deeded to her. The witness, Langston, was with Minhinnette one day on the land, and Minhinnette asked him to go up east of the home to a corner, and they put down a stake, then went around the old Alabama road and put a stake down "right close to the highway on the right-hand side at the point of the old road." That was after he deeded the property to her. The witness stated. "with reference to the little Frank Miller place between the old and the new Alabama road, these stakes included from the old Alabama road plumb out to the new highway." You could see where the old road had been. To a certain extent it was abandoned. It was not the best of roads, but it was travelled. It had been worked since they built the new highway, several times after the new highway from the city limits to around where the old Melson road crosses. The county worked it. The Melson road comes down to the new highway. There were no stobs out down there anywhere else. He had a fence around part of the old road. Most of the time after they built the new road and before they built the new road, he did not have a fence across the highway at that time. After Minhinnette "made this deed to Miss Rackley, he did point out the lines to the place he had deeded to her." Langston had *Page 727 
been back with Minhinnette and walked over the lines; Minhinnette said, "the Cave Spring old Alabama road was the line;" the old road had not been abandoned then; he made this deed to Miss Rackley about 1938. The conversation was some time during the summer of 1938, he thought.
On the second trial, C. T. Blankenship, a witness for the plaintiff, testified: That Minhinnette told the witness about his making a deed to Miss Rackley. It was after he had made the deed that he told the witness "he transferred the foreclosure deed he got from the court to Miss Rackley." He pointed out the property, and showed the witness that is was all of the land lying south of the old Alabama road. Minhinnette stated to Blankenship that he had deeded it to her; and said that he wished he had made arrangements to keep the little tract to give him an opening out on the main highway. On cross-examination this witness stated that Minhinnette had pointed out the land to him and Jeter Miller several times. The last conversation was in the fall of 1938, the last year the witness lived with Minhinnette.
On the second trial, G. L. Ingram testified for the petitioner: That in 1942 he rented the little Frank Miller farm from Mr. Minhinnette. After he had rented it, Minhinnette told Ingram that the old road was the line. Ingram asked Minhinnette if he would sell it, and Minhinnette said that it belonged to Miss Rackley.
On the second trial, W. S. Gibbons testified for the petitioner: That in 1938 or 1939 he and Minhinnette were together on the property, and Minhinnette pointed out "this property on the south of the road," and said, "I have deeded all that to Aurelia," and that was on the old road and after he had made the deed to her.
On the second trial, Mrs. Maud Welch, one of the defendants, Mrs. Beatrice Hernandez, an intervenor, R. Redmond, and Mrs. Bollinger, all testified as witnesses for the defendants; but that testimony related to the condition of the buildings on the disputed property and questions concerning the alleged improvements placed there by Miss Rackley. So far as the record discloses, the testimony of these last four witnesses did not relate to questions as to the reformation of the deed of Miss Rackley.
By direction of the court the jury's further verdict was: "We further find in favor of the prayers of the intervenor, Mrs. Hernandez, and we also find in favor of the prayers of the defendant, *Page 728 
Mrs. Maud Welch, administratrix of E. R. Minhinnette."
The plaintiff filed her motion for new trial on the usual general grounds, amending it with a special ground complaining of the direction of the verdict and the portion of the verdict directed, on the grounds: that the court erred, because the direction of a verdict in favor of the defendant under the pleadings and evidence in said case was not demanded by the evidence and was contrary to law; that, under the pleadings, there was no evidence authorizing the court to direct such a verdict in favor of the defendant and intervenor; that the evidence demanded a verdict in favor of the prayers of the petition and the amendment thereto; and that, under the pleadings and evidence, there was an issue of fact which should have been determined by the jury as to whether or not the deed from E. R. Minhinnette to the plaintiff, Miss Aurelia Rackley, should be reformed as prayed.
The motion for new trial as amended being overruled, the case was brought to this court.
Upon the former appearance of this case in this court it was held in part: "The record is silent as to any mutual mistake of the parties as to the boundary expressed in the petitioner's deed and, hence, there was no basis for reformation of the instrument. Reformation being a prerequisite to the relief sought, the verdict in favor of the petitioner was unauthorized." Miller v.Rackley, 199 Ga. 370, 376 (supra). Although on the second trial an amendment was made to the petition, it related to claimed repairs and improvements made by the petitioner to the property in dispute. On the question of reformation of the deed for alleged mistake, the pleadings were alike in both the first and second trials. The plaintiff in error states in her brief: "As we understand it, the question now is whether or not there was sufficient evidence to carry the case to the jury on the question of the reformation of the deed."
It is a well-settled rule that the decision of an appellate court is controlling on a subsequent appeal, where the pleadings and evidence are substantially the same. Smoot v. Alexander,192 Ga. 684 (16 S.E.2d 544); Taylor v. Felder, 11 Ga. App. 742 *Page 729 
(76 S.E. 75); Cook v. Case Threshing Machine Co., 17 Ga. App. 543
(87 S.E. 832); Liberty Nat. Life Ins. Co. v. Parramore,70 Ga. App. 320 (28 S.E.2d 190). Neither the plaintiff nor the scrivener who prepared the deed from E. R. Minhinnette to Aurelia Rackley testified on either of the two trials concerning the intention of the parties with reference to whether the land conveyed by the deed was intended by both parties to include the property between the old and new road or highway known as the Cave Spring and Alabama public road. There was testimony in the first trial as to statements made by Minhinnette to others after the execution of the deed concerning the boundary of lands owned by Miss Rackley. However, under the ruling of this court on the first appearance, this evidence was insufficient to authorize a jury to find for the petitioner's claim of reformation of a deed for alleged mutual mistake. Although on the second trial witnesses for the petitioner went into greater detail, the character of their testimony was virtually the same as that offered on the first trial. In neither trial did the witnesses purport to have knowledge of, or to testify as to, the intention of the parties to the deed at the time of and in reference to the particular deed under which Miss Rackley claimed.
Since the evidence was substantially the same on both trials insofar as it related to the question of the alleged mistake, and, under the law of the case, the evidence was insufficient to reform the deed for mutual mistake, the trial court did not err in directing a verdict for the defendants on that issue, or in overruling the motion for new trial as amended. AmericanNational Ins. Co. v. Nelson, 69 Ga. App. 537
(26 S.E.2d 203).
Judgment affirmed. All the Justices concur.